**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

**RAMON JAQUEZ, on behalf of himself**
**and all others similarly situated,**

Plaintiff,

**v.**

**DERMPOINT, INC.,**

Defendant.

**Civil Action No. 1:20-cv-07589-JPO**

ECF CASE

**JURY TRIAL DEMANDED**

## MEMORMANDUM OF LAW IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Neal G. Massand (*Pro Hac Vice Pending*)
Texas Bar No. 24039038
nmassand@nilawfirm.com
**Ni, Wang & Massand, PLLC**
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

**ATTORNEYS     FOR     DEFENDANT**
**DERMPOINT, INC.**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  STATEMENT OF FACTS ............................................................................................... 2

III. ARGUMENTS .................................................................................................................. 4

1.  Legal Standard Regarding FED. R. CIV. P. 12(b)(6) ............................................... 4

2.  Plaintiff's Claims Should Be Dismissed Because The Allegations Lack The Required
Specificity............................................................................................................................ 4

3.  Plaintiff's Claims Should Be Dismissed Because They Fail To State A Claim Under The
ADA ..................................................................................................................................... 5

4.  Plaintiff's Claims Should Be Dismissed Because The Website Is Not A Place Of Public
Accommodation Under The NYCHRL.................................................................................. 10

5.  The Complaint Should Be Dismissed Because the WCAG Are Not Legally Binding On
Defendant ............................................................................................................................ 11

IV.  CONCLUSION................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Access Now, Inc. v. Southwest Airlines, Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002)......................................................................... 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 3, 4

*Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*,
37 F.3d 12 (1st Cir. 1994) ............................................................................................ 7

*Co v. JP Morgan Chase Bank*,
2013 U.S. Dist. LEXIS 60130 (N.D. Cal. Apr. 26, 2013)........................................... 12

*De La Rosa v. 597 Broadway Dev. Corp.*,
2015 U.S. Dist. LEXIS 158089 (S.D.N.Y. Aug. 4, 2015) .......................................... 11

*Doe v. Mutual of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999)......................................................................................... 7

*Earll v. eBay, Inc.*,
599 Fed.Appx. 695 (9th Cir. 2015) ............................................................................... 8

*Ford v. Schering–Plough Corp.*,
145 F.3d 601 (3rd Cir. 1998).......................................................................................... 8

*Frank G. v. Bd. of Educ. Of Hyde Park*,
459 F.3d 356 (2d Cir. 2006)........................................................................................... 7

*Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*,
391 F.3d 312 (1st Cir. R.I. 2004) ............................................................................... 13

*Gil v. Winn Dixie Stores, Inc.*,
242 F.Supp.3d 1315 (S.D. Fla. 2017)............................................................................ 8

*Harris v. Mills*,
572 F.3d 66 (2d Cir.2009)............................................................................................. 4

*Huerta v. Pasternack*,
2012 NTSB LEXIS 4 (Feb. 13, 2012).......................................................................... 12

*Hupfauer v. CitiBank N.A.*,
2016 U.S. Dist. LEXIS 112227 (N.D. Ill. Aug. 19, 2016)........................................... 13

*Kidwell v. Florida Comm'n on Human Relations*,
2017 WL 176897 (M.D. Fla. Jan. 17, 2017) ................................................................ 9

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012)............................................................................................ 7

*Mamisay v. Experian Info. Solutions, Inc.*,
  2017 U.S. Dist. LEXIS 40793 (N.D. Cal. Mar. 21, 2017) ...................................................... 12

*Parker v. Metro. Life Ins. Co.*,
  121 F.3d 1006 (6th Cir. 1997) ...................................................................................................... 8

*Pasternack v. Lab. Corp. of Am.*,
  2014 U.S. Dist. LEXIS 137671 (S.D.N.Y. Sept. 28, 2014) .................................................... 12

*Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program*,
  595 F.3d 447 (2d Cir. 2010) ........................................................................................................ 7

*Simpson v. Sanderson Farms, Inc.*,
  744 F.3d 702 (11th Cir. 2014) ...................................................................................................... 4

*United States v. Am. Soc'y of Composers, Authors, Publishers*,
  627 F.3d 64 (2d Cir. 2010) ........................................................................................................... 6

*United States v. Thirty-Seven (37) Photographs*,
  402 U.S. 362 (1971) ................................................................................................................... 10

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ...................................................................................................... 8

*Zaid v. Smart Fin. Credit Union*,
  2019 U.S. Dist. LEXIS 11363 (S.D. Tex. Jan. 24, 2019) ......................................................... 9

**Statutes**

42 U.S.C. § 12181 ........................................................................................................................... 6

42 U.S.C. § 12182 ........................................................................................................................... 5

NYC Admin. Code § 8-107 ........................................................................................................... 11

Defendant Dermpoint, Inc., respectfully submits this Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss ("Motion") and, in support thereof, respectfully states as follows:

## I.      PRELIMINARY STATEMENT

The Complaint in this matter should be dismissed for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).  Plaintiff Ramon Jaquez ("Plaintiff" or "Jaquez"), a blind individual, filed his Complaint against Dermpoint on behalf of himself and others similarly situated on September 16, 2020.  In the Complaint, Plaintiff alleges that the Dermpoint violated Title III of the Americans with Disabilities Act of 1990 (the "ADA") and analogous New York City Human Rights Law ("NYCHRL") by failing to make its website, www.dermpoint.com (the "Website"), equally accessible to blind individuals so that they may independently navigate and complete purchases like non-visually impaired customers.  Plaintiff seeks to represent a class of similarly situated individuals and proceed as a class action.

The Complaint, however, should be dismissed because it provides little more than threadbare, boilerplate allegations related to the purported defects on the Website.  Complaint at 22-25.  They do not identify any specific violations to support his claims.  *Id.*  In fact, the barebones allegations provide no notice whatsoever of how Dermpoint supposedly violated any statute or how Plaintiff was unable to navigate the website.  *Id.*  Furthermore, as explained more fully below, even Plaintiff's threadbare allegations are implausible (if not impossible).

Plaintiff's claims also fail because Plaintiff cannot establish that the Website violates the ADA or NYCHRL.  First, the Website is not a "public accommodation" or "place of public accommodation" because there are no physical locations in which the Website provides or supplies access to, there is an insufficient nexus to a place of public accommodation.  Second, because there

1

are no official regulations on what the ADA or NYCHRL requires for website accessibility, Plaintiff cannot establish the Website violates the ADA or NYCHRL.  Without such guidance, Dermpoint cannot possibly comply when there are no intelligible standards for ADA or NYCHRL website accessibility.  While Plaintiff points to voluntary guidelines known as the Web Content Accessibly Guidelines ("WCAG") as if they are required by law, no statute or regulation requires them.  Therefore, the Complaint should be dismissed.

## II.    STATEMENT OF FACTS

Dermpoint is a small, family-owned business.  Declaration of Neil Butani ("Butani Dec.") at ¶ 2.    Dermpoint sells skin care, make-up and cosmetic products through its website www.dermpoint.com (the "Website").  *Id*.  Dermpoint has average annual sales of approximately $5,000.00.  *Id*.  Its gross revenues for 2019 were $2,426.00.  *Id*.  Its gross revenues for the first three quarters of 2020 were $2,240.00.  *Id*.  Dermpoint has no physical, brick-and-mortar locations. *Id*.  Plaintiff alleges he is "a blind, visually-impaired handicapped person."  Complaint ¶ 18. Further, Plaintiff alleges that the Website "includes multiple barriers making it impossible for himself, and any other visually impaired or blind person, from enjoying access to the Website's content equally to that of a sighted user."  Complaint at ¶ 24.  Plaintiff brings this lawsuit on behalf of himself and others similarly situated alleging that Dermpoint's Website is not accessible to him or others who are visually impaired. Complaint ¶ 4-6.  On September 16, 2020, Plaintiff filed a class action on behalf of himself and others similarly situated.  See Complaint.  Plaintiff seeks injunctive relief; declaratory relief; compensatory and statutory damages; attorney's fees, expenses, and costs; and pre and post-judgment interest, based on Plaintiff's alleged attempts to use Defendant's Website.  *Id*.

Plaintiff claims to have visited the Website from New York on or around August of 2020, but the Complaint does not state any specific dates and/or times when he was unable to access Defendant's Website.  Complaint ¶ 22.  The following is the most specific allegation in the Complaint:

> For example, many features on the Website fail to accurately describe the contents of graphical images, fail to properly label title, fails to distinguish on page from another, contain multiple broken links, contain headings that do not describe the topic or purpose and the keyboard user interfaces lack a mode of operation where the keyboard focus is visible.

Complaint at ¶ 25.  The Complaint does not identify any images, titles, pages, links, or headings that could possibly substantiate Plaintiff's claims.  This is because Plaintiff simply did not visit the Website when he claims he did.  Butani Dec. at ¶ 5.  There have been no visitors from New York throughout the entirety of this year until at least after the lawsuit was filed, and there were no visitors at all during the month of August 2020.  *Id*. at ¶ 5.  This is confirmed by the true and correct Google Analytics data included in Butani Dec., Exhibit 1-A.  4.  The Website incorporates and did incorporate real-time user analytics from Google Analytics at the time of the alleged visits by the Plaintiff.  Butani Dec. at ¶ 4.  Google Analytics is a most accurate, reliable, scientific, industry-accepted and undisputed log of visits of every visitor to the Website.  *Id*.  Google Analytics ascertains and keeps a record of each visit by every user to our website, logs their approximate location, connection type, device they are using and other relevant technical details.  *Id*.  Google Analytics also tracks the time the user spends on each page, the pages they navigate to, pages they refresh, and other interactions with our website for the entirety of their visit session.  *Id*.  Dermpoint's technical reports are a part of its business records.  *Id*.  As per these reports, all stages or functions which report to Google Analytics were fully operational at the time the alleged visits occurred by Plaintiff.  *Id*.  Therefore, it is implausible, if not impossible, that Plaintiff can

3

substantiate his claims.  Plaintiff and his counsel have filed numerous nearly identical lawsuits

against other businesses which similar allegations are made without specificity.

### III.    ARGUMENTS

#### 1.   Legal Standard Regarding FED. R. CIV. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P 12(b)(6), a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  The plausibility standard is met only where the facts alleged enable the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Simpson v.*

*Sanderson Farms, Inc.,* 744 F.3d 702, 708 (11th Cir. 2014).  "Although 'a court must accept as

true all of the allegations contained in a complaint,' that 'tenet' 'is in applicable to legal

conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (quoting

*Iqbal*, 129 S.Ct. at 1949).  In addition, "'only a complaint that states a plausible claim for relief

survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for

relief will ... be a context specific task that requires the reviewing court to draw on its judicial

experience and common sense.'"  *Id*. (quoting *Iqbal*, 129 S. Ct. at 1950).  "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678.  A mere

recitation of the elements of a cause of action will not due and the plaintiff "must offer in support

of its claim sufficient factual matter, accepted as true, to raise a right to relief above the speculative

level."  *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555).

#### 2.   Plaintiff's Claims Should Be Dismissed Because The Allegations Lack The Required Specificity

Plaintiff's conclusory, unsupported allegations are insufficient to meet the pleading standard and, therefore, the Complaint should be dismissed. This is especially so in a case such as this where it is implausible—if not impossible—for Plaintiff to provide the necessary specificity to meet the pleading standard. Here, Plaintiff fails to identify a single image, title, page, link, or heading that could possibly substantiate his claims. Dermpoint is left with no way to determine what Plaintiff contends is the basis of the lawsuit. Furthermore, it is unclear, one would dare say even doubtful, that Plaintiff attempted to navigate the Website. There simply has not been significant traffic on the Website. There have been no visitors from New York throughout the entirety of this year prior to the lawsuit and there were no visitors at all during the month of August, 2020. Butani Dec. 1 at ¶ 5. This is similarly confirmed by Google Analytics data. Butani Dec., Exhibit 1-A. Simply put, Plaintiff has not provided any explanation beyond conclusory statements showing how he was unable to navigate the Website, and it seems highly unlikely that he ever attempted to navigate the Website at all. Therefore, the Complaint should be dismissed.

**3. Plaintiff's Claims Should Be Dismissed Because They Fail To State A Claim Under The ADA**

Plaintiff's Complaint contends that the Website is a "public accommodation", a place or provider of public accommodation, or a good, service, facility, privilege, advantage, or accommodation of a place of public accommodation as those terms are defined by the ADA and related regulations. Complaint ¶ 43; 42 U.S.C. § 12182(a)(2)(A)(iii).

The statute defines "public accommodation" for purposes of the ADA as follows:

(A)     an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B)     a restaurant, bar, or other establishment serving food or drink;

5

(C)     a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D)     an auditorium, convention center, lecture hall, or other place of public gathering;

(E)     a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F)     a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a healthcare provider, hospital, or other service establishment;

(G)     a terminal, depot, or other station used for specified public transportation;

(H)     a museum, library, gallery, or other place of public display or collection;

(I)     a park, zoo, amusement park, or other place of recreation;

(J)     a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K)     a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L)     a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation. 42 U.S.C. § 12181(7).

Notably, nowhere in the definition of "public accommodation" covers "websites." Instead, every place listed as a public accommodation in 42 U.S.C. § 12181 is a physical location.

Clearly, the ADA was not drafted with the Internet nor websites in mind. Websites did not exist until 1993, two years after the ADA was adopted. Other federal courts have considered whether commercial websites qualify as places of public accommodation under the ADA. However, the Second Circuit has yet to take a position on the issue. Other district courts within the Second District have analyzed the issue, but a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." 18 Moore's Federal Practice § 134.02[1][d].

6

For statutory construction, the Court must first determine whether the language at issue has a "plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. Am. Soc'y of Composers, Authors, Publishers*, 627 F.3d 64, 72 (2d Cir. 2010).  If a court can ascertain the plain meaning of the statutory text by examining the context of the statute as a whole, it need not proceed any further, but if the text's meaning is ambiguous then a court may consult other sources, including the statute's legislative history, its broader context, and primary purpose. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012); *Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program*, 595 F.3d 447, 453 (2d Cir. 2010).  The Court's charter is to interpret the statute in "a way that avoids absurd results." *Frank G. v. Bd. of Educ. Of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006).

Courts in the First and Seventh Circuits have taken a broad approach and expanded the definition to include non-physical locations. *See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994) (holding the "ambiguity, considered together with agency regulations and public policy concerns, persuades us that the phrase is not limited to actual physical structures."); *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999).

On the other hand, the Third, Sixth, Ninth Circuits hold that "places of public accommodation" are physical locations based on the statutory definition, such that goods and services provided through a website must have a sufficient nexus to a physical place for purposes of the ADA. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) ("The principle of noscitur a sociis requires that the term, 'place of accommodation,' be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical place is required."); *Earll v.*

7

*eBay, Inc.*, 599 Fed.Appx. 695, 696 (9th Cir. 2015) (the term "place of public accommodation" requires some connection between the good or service alleged to be discriminatory and a physical place); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 614 (3rd Cir. 1998) (holding "public accommodation" and the list of examples in the statute did not refer to non-physical access); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in [the statute] is that a public accommodation is a physical place.").

Courts in the Eleventh Circuit have followed suit and uniformly hold that "the ADA does not apply to a website that is wholly unconnected to a physical location." *Gil v. Winn Dixie Stores, Inc.*, 242 F.Supp.3d 1315, 1312 (S.D. Fla. 2017); *see Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1319 (S.D. Fla. 2002) ("To fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure. To expand the ADA to cover "virtual" spaces would be to create new rights without well-defined standards."); *Kidwell v. Florida Comm'n on Human Relations*, No. 16-403, 2017 WL 176897, *3 (M.D. Fla. Jan. 17, 2017) (rejecting claim based on plaintiff failing to demonstrate Busch Gardens' or SeaWorld's online website prevents access to a specific, physical, concrete space.).  Even just recently in the Fifth Circuit, a district court held that "while websites may be affiliated with brick-and-mortar businesses that are places of accommodation, that does not render the businesses' website themselves places of accommodation" and requiring a distinct physical place of business. *Zaid v. Smart Fin. Credit Union*, No. H-18-1130, 2019 U.S. Dist. LEXIS 11363, at *15 (S.D. Tex. Jan. 24, 2019).

In this case, the Court should follow the analysis in the Third, Sixth, and Ninth circuits because the statute is unambiguous.  By looking at the statutory text and examining the statute's context, the places of public accommodation listed in the definition are all locations able to be

8

accessed physically.  Applying *ejusdem generis*, which holds when a general term follows a list of particular items, the general term only applies to things similar to the particular items, reaches the same result.  Finding the statute is "ambiguous" to permit the use of a more expansive definition, eliminating any physical location connection, would effectively re-write the statute and runs contrary to the purposes of judicial review.  *See United States v. Thirty-Seven (37) Photographs*, 402 U.S. 362, 369 (1971) (Supreme Court refused to modify statute and ordinances when constitutionality of construction was raised because "it is up to Congress, not this Court, to rewrite the statute.").

Here, Plaintiff alleges that he was "denied access similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from being able to enjoy the privileges and benefits of Defendant's public accommodation."  Complaint ¶ 23.  Nowhere in the Complaint has Plaintiff alleged by any stretch of the imagination that Dermpoint or the Website has any connection to any actual brick-and-mortar stores or any other places of public accommodation that Dermpoint owns, leases, or operates as required by the ADA.  Also, Plaintiff has not alleged he has visited, was unable to visit, or was otherwise deterred from visiting a physical retail location to purchase Dermpoint's products.  In other words, Plaintiff has not alleged the Website deprived him of full and equal access to the privileges and services provided by Dermpoint through a physical public accommodation such as a retail store.  Defendant has not alleged any particular facts in its complaint to identify a retail store or other physical public accommodation to satisfy this element of an ADA claim, such as an address, an intersection, or even a city in which such a physical retail store is located. Furthermore, it cannot because no such location exists.  Butani Dec. at ¶ 2.  Mere conclusory pleading is not enough under *Iqbal* and *Twombly*.  Leave to amend would be futile as

9

the Defendant does not operate, lease, or own any brick-and-mortar retail stores or other places of public accommodation under the ADA.

Accordingly, Plaintiff fails to state a claim for relief because Plaintiff fails to establish that the Website is a "place of public accommodation" which prevented him from enjoying the goods and services connected to a specific, physical, concrete space sufficient to bring the Website within the purview of the ADA. Thus, the Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

4. **Plaintiff's Claims Should Be Dismissed Because The Website Is Not A Place Of Public Accommodation Under The NYCHRL**

The NYCHRL prohibits withholding or denying access to any place of public accommodation because of an individual's "actual or perceived" disability. NYC Admin. Code § 8-107(4)(a). The law requires anyone covered by the statute to "make reasonable accommodation to enable a person with a disability to enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." *Id*. § 8-107(15)(a). *See also De La Rosa v. 597 Broadway Dev. Corp.*, 2015 U.S. Dist. LEXIS 158089 (S.D.N.Y. Aug. 4, 2015).

Similar to the ADA, the NYCHRL makes no mention of websites as places of public accommodation. Also, similar to the federal regulations, New York State and New York City have mandated that government websites must be accessible but have declined to pass corresponding requirements applicable to websites operated by private entities. *See, e.g.*, NYS Policy NYS-P08-005 Accessibility of Web Based Information and Applications; Intro. 683-A Protocol Relating to the Accessibility of City Government Websites for Persons with Disabilities. Moreover, Dermpoint has found no case law extending the NYCHRL to websites or holding that such sites

are places of public accommodation within the meaning of the statutes.  Therefore, Plaintiff's

claims should, again, be dismissed pursuant to Rule 12(b)(6).

    **5.  The Complaint Should Be Dismissed Because the WCAG Are Not Legally Binding On Defendant**

In the absence of specific statutory or regulatory authority applying Title III protections to

private websites, the Complaint erroneously casts the Website's alleged failure to adhere to the

best practices set forth in the WCAG lead to a violation of the ADA and NYCHRL.  Complaint at

¶ 30.  The WCAG were created by the WAI to provide guidance to web developers as to best

practices to create a fully-accessible website. The WCAG, however, have not been incorporated

into law by Congress or DOJ regulations.  Courts in many different contexts have regularly

recognized the difference between voluntary compliance with aspirational industry guidelines as

distinct from a legally enforceable obligation to comply with mandatory statutory or regulatory

imperatives.  *See, e.g., Pasternack v. Lab. Corp. of Am.*, 2014 U.S. Dist. LEXIS 137671, *8

(S.D.N.Y. Sept. 28, 2014), quoting *Huerta v. Pasternack*, NTSB Order No. EA-5615, 2012 NTSB

LEXIS 4, 2012 WL 562137, at *8 (Feb. 13, 2012) (the "DOT [Urine Specimen] Collection

Guidelines are just that — guidelines, and not regulations.  Thus, they do not carry with them the

force of a regulation to make them binding on the collector."); *Mamisay v. Experian Info.

Solutions, Inc.*, 2017 U.S. Dist. LEXIS 40793, *20 (N.D. Cal. Mar. 21, 2017), (quoting *Co v. JP

Morgan Chase Bank*, No. 12-6560 PJH, 2013 U.S. Dist. LEXIS 60130, 2013 WL 1788061, at *2

(N.D. Cal. Apr. 26, 2013) ("[P]laintiffs concede that [the Metro 2] guidelines are not binding on

Chase, and that non-compliance with the guidelines does not constitute a violation of FCRA or

CCRAA.")); *Hupfauer v. CitiBank N.A.*, No. 16 C 475, 2016 U.S. Dist. LEXIS 112227, 2016 WL

4506798, at *4 n.5 (N.D. Ill. Aug. 19, 2016) ("Plaintiff's argument that Experian's reporting

deviated from guidelines set by the Consumer Data Industry Association is beside the point, as

11

these guidelines do not establish the standards for accuracy under the FCRA and cannot form the basis for FCRA liability."); *Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 326 (1st Cir. R.I. 2004) ("[V]oluntary standards are not law.").  Particularly where, such as with the WCAG, implementation of a non-mandatory standard would require significant expense and engagement of highly specialized experts, courts should be wary of requiring private entities to comply with an arbitrary standard that has not been passed through the standard channels of legislative enactment or regulatory rulemaking.  Accordingly, this Plaintiff's claims must be dismissed.

## IV.    CONCLUSION

Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6).  The claims are based upon mere threadbare allegations that fall far short of the applicable pleading standards.  Furthermore, the claims fail to appropriately fall under the ADA or NYCHRL.  Lastly, they are based upon a voluntary standard that has not been adopted under any law or regulation.

DATED December 11, 2020.                    Respectfully submitted,

By: */s/ Neal G. Massand*
Neal G. Massand (*Pro Hac Vice Pending*)
Texas Bar No. 24039038
nmassand@nilawfirm.com
**Ni, Wang & Massand, PLLC**
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

**ATTORNEYS FOR DEFENDANT
DERMPOINT, INC.**

12

## CERTIFICATE OF SERVICE

I certify that the foregoing document was electronically filed with the Clerk of the Court on Friday, December 11, 2020, via the Court's CM/ECF system and has been served on all counsel of record who have consented to electronic service.

Dated: <u>December 11, 2020</u>                                    */s/ Neal G. Massand*
                                                              Neal G. Massand

13