**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RAMON JAQUEZ, on behalf of himself and all others similarly situated,** | **Civil Case No.:** <br> **1:20-cv-07589-JPO** |
| **Plaintiff,** | |
| **-against-** | |
| **DERMPOINT, INC.,** | |
| **Defendant.** | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

---

**MARCUS & ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**Ari H. Marcus, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:     (732) 695-3282**
**Attorneys for Plaintiff**

## TABLE OF CONTENTS

I.      **PRELIMINARY STATEMENT**………………………………...……...…...1

II.     **STANDARD OF REVIEW**………………………………………………3

III.    **ARGUMENT**…………………………...……………………………...…..3

    A.  **The Purpose Of The ADA**…………………………………………..…..3

    B.  **Plaintiff Adequately Pleaded A Violation Of The ADA**……………………………..4

    C.  **The ADA Applies To Websites, Even Without A Connection To A Brick-And-Mortar Location**………………………………………9

    D.  **Like The ADA, The NYCHRL Bars Discrimination On Websites**…………………..13

    E.  **The Effect Of The WCAG Is Not A Reason To Dismiss This Case**…………………..14

IV.    **CONCLUSION**…………………………………………………………16

## <u>TABLE OF AUTHORITIES</u>

*Access Now, Inc. v. Blue Apron, LLC*,

    2017 WL 5186354 (D.N.H. Nov. 8, 2017)…………………………………………14, 15

*Allaire Corp. v. Okumus*,

    433 F.3d 248 (2d Cir. 2006)…………………………………………………………..,3, 8

*Andrews v. Blick Art Materials, LLC*,

    268 F. Supp. 3d 381 (E.D.N.Y. 2017)…………………………......……..,2, 9, 10, 13, 15

*Ashcroft v. Iqbal*,

    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)………………………………3

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)………………………………3

*Cantey v. City of New York*,

    No. 10 CIV. 4043 JPO, 2012 WL 6771342 (S.D.N.Y. Dec. 11, 2012)……………………3

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*,

    37 F.3d 12 (1st Cir. 1994)…………………………………………………………..12

*Del-Orden v. Bonobos, Inc.*,

    No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)……………...5, 11

*Diaz v. Lobel's of New York, LLC*,

    No. 16CV6349NGGSMG, 2019 WL 3429774 (E.D.N.Y. July 30, 2019)……………14-15

*Doe v. Mut. of Omaha Ins. Co.*,

    179 F.3d 557 (7th Cir. 1999)…………………………………………………………...12

*Dominguez v. Banana Republic, LLC*,

    No. 1:19-CV-10171-GHW, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020)………………11

*Loeffler v. Staten Island University Hosp.*,

    582 F.3d 268 (2d Cir. 2009)……………………………………………………………13

*Markett v. Five Guys Enterprises LLC*,

    No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)…………..3, 5, 6, 12

*Nat'l Fed'n of the Blind v. Scribd Inc.*,

    97 F. Supp. 3d 565 (D. Vt. 2015)………………………………………………………12

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*,

    869 F.Supp.2d 196 (D. Mass. 2012)…………………………………………………...12

*Noel v. New York City Taxi and Limousine Comm'n,*

 687 F.3d 63 (2d Cir. 2012)……………………………………………………………9

*Pallozzi v. Allstate Life Insurance Co.,*

 198 F.3d 28 (2d Cir. 1999)……………………………………………………...1, 10

*PGA Tour, Inc. v. Martin,*

 532 U.S. 661 (2001)……………………………………………………………3, 4, 9

*Reed v. 1-800-Flowers.com, Inc.,*

 327 F. Supp. 3d 539 (E.D.N.Y. 2018)…………………………………………15

*Reed v. CVS Pharmacy, Inc.,*

 2017 WL 4457508 (C.D. Cal. Oct. 3, 2017)…………………………………...15

*Roberts v. Royal Atl. Corp.,*

 542 F.3d 363 (2d Cir. 2008)………………………………………………………4

*Robles v. Yum! Brands, Inc.,*

 2018 WL 566781 (C.D. Cal. Jan. 24, 2018)………………………………………15

*Sullivan v. Study.com LLC,*

 No. 18-CV-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019)……………6, 9, 14

*Thorne v. Formula 1 Motorsports, Inc.,*

 No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019)……1, 2, 5, 6, 10, 14

*Wu v. Jensen-Lewis Co.,*

 345 F. Supp. 3d 438 (S.D.N.Y. 2018)………………………………………...5, 8

Statutes and Other Sources

28 C.F.R. § 36.201………………………………………………………………………3

29 C.F.R. § 1630.2(j)(3)(iii)………………………………………………………………5

42 U.S.C. § 12101(a)(1)………………………………………………………………...3

42 U.S.C. § 12101(a)(2)………………………………………………………………...4

42 U.S.C. § 12101(a)(3)………………………………………………………………...4

42 U.S.C. § 12182(a)……………………………………………………………………4

42 U.S.C. § 12182(b)(2)(A)(iii)………………………………………………………6, 14

75 Fed. Reg. 43460-01 (July 6, 2010)…………………………………………………...4

H.R. Rep. No. 101-485, pt. 2, p. 50 (1990)……………………………………………………4

S. Rep. No. 101-116, p. 20 (1989)…………………………………………………………4

*Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary,*

106th Cong., 2d Sess. 65-010 (2000)………………………………………………………5

N.Y.C. Admin. Code § 8–107(4)(a)…………………………………………………...13

N.Y.C. Admin. Code § 8–107(15)(a)…………………………………………………13

USCCAN 1990, pt. 2, pp. 303, 332…………………………………………………...4

## I.     PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss, brought pursuant to FRCP 12(b)(6).  Ramon Jaquez commenced this action via the filing of a Complaint which alleged that the Defendant violated the Americans with Disabilities Act (the ADA).    As alleged in the Amended Complaint, the Defendant operates the website www.dermpoint.com, from where it sells skincare products to the general public.  Mr. Jaquez maintains that the Website is not compatible with the screen-reading software used by visually-impaired individuals such as himself, and that he and the putative class members have thereby been denied the same access to the Defendant's online store as those afforded to sighted individuals.

Defendant now moves to dismiss based on a whole host of meritless arguments.  For example, Defendant primarily argues that the ADA is only concerned with facilitating physical access to a place of public accommodation, and that a website without a corresponding brick-and-mortar location is not subject to the Act.  But this Court has already rejected that exact argument in *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019), citing the Second Circuit's finding that the ADA "was meant to guarantee [disabled individuals] more than mere physical access."  *Id.,* at *2, citing *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28, 32 (2d Cir. 1999).

Defendant next argues that the Plaintiff's allegations regarding the accessibility barriers he encountered is insufficiently specific enough to constitute a "short and plain statement" of the Plaintiff's claim.  This argument, too, is foreclosed by this Court's holding in *Thorne,* where far less specific allegations were enough to survive a Motion to Dismiss.  *See, Thorne,* 2019 WL 6916098, at *3 ("Thorne alleges that Formula 1's website fails to provide alternative text for

1

images, uses empty links containing no text, and uses redundant, adjacent links.  These allegations, taken as true, plausibly show that Formula 1 discriminated against Thorne by denying him a full and equal opportunity to use its website").

Defendant next claims that Plaintiff could not have encountered the accessibility issues outlined in the Amended Complaint, because (1) those issues purportedly don't exist, and (2) because no visitors from New York accessed the Defendant's website on the dates alleged in the Plaintiff's Complaint.  The problem with both of these arguments is that they clearly cannot be considered on a Motion to Dismiss, based on facts outside the four corners of the pleadings.

Defendant next argues that the Plaintiff's NYCHRL claims should also be dismissed, claiming that this statute doesn't apply to websites either.  Again, Defendant is wrong.  The NYCHRL provides *more* protections than the ADA, not *less*.  For that reason, courts in New York have already found that the NYCHRL – like the ADA – absolutely does apply to websites.  *See, Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 400–01 (E.D.N.Y. 2017).

Finally, the Defendant argues that the case should be dismissed because the Web Content Accessibility Guidelines (the WCAG) are not binding upon it.  But that argument misses the mark, because this case is not about whether the website has to comply with the WCAG.  Instead, this case is about Defendant's refusal to make its website accessible to disabled Americans, as required by the ADA.  The fact that the Defendant's website fails to comply with the WCAG just highlights that the website presents accessibility obstacles to disabled individuals, who merely want the same access afforded to non-disabled individuals; it does not mean that the WCAG, and not the ADA, are the benchmark of compliance.

For the reasons set forth below, it is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.

## II.    STANDARD OF REVIEW.

"To survive a motion to dismiss pursuant to Federal Rule 12(b) (6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.' " *Cantey v. City of New York*, No. 10 CIV. 4043 JPO, 2012 WL 6771342, at *2 (S.D.N.Y. Dec. 11, 2012), <u>citing</u> *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006).

## III.    ARGUMENT.

### A.  The Purpose Of The ADA.

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a); <u>see</u> 28 C.F.R. § 36.201.  As the Supreme Court has repeatedly recognized, Congress's purpose in enacting the ADA was broad: "to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

In enacting the ADA, Congress found that "physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination." 42 U.S.C. § 12101(a)(1) (emphasis added). Moreover, "Congress found that 'historically, society has tended

to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' " *PGA Tour*, 532 U.S. at 674-75 (quoting 42 U.S.C. § 12101(a)(2)). Congress identified many areas of society in which individuals with disabilities faced persistent discrimination, including "employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. § 12101(a)(3). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.' " *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), USCCAN 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.*

### B. Plaintiff Adequately Pleaded A Violation Of The ADA.

Plaintiff's main claim in this action arises under the ADA. Section 302(a) of Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Thus, to establish a Title III violation, a plaintiff must demonstrate "(1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

4

The first element of the *Roberts* test is easily met here.  The Amended Complaint alleges that Mr. Jaquez "is visually impaired and legally blind, in that he has visual acuity with correction of less than or equal to 20 x 200."  *See,* Docket 5, ¶12.  The ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  Mr. Jaquez is disabled because he is substantially limited in the major life activity of seeing. *See* 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: ... blindness substantially limits seeing").  As this Court has already found, "a legally blind person who requires screen-reading software to access the internet is disabled within the meaning of the ADA." *Thorne,* 2019 WL 6916098, at *2.

The second element is also easily met here.  This Court has already held that a website "is a place of public accommodation." *Thorne,* 2019 WL 6916098, at *2.  The district courts in the Second Circuit have consistently agreed with this approach.  *See e.g., Del-Orden v. Bonobos, Inc.,* No. 17 CIV. 2744 (PAE), 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017)("A commercial website itself qualifies as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access"); *Markett v. Five Guys Enterprises LLC*, No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)(holding that a fast food restaurant's website, Fiveguys.com, was "covered under the ADA, either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodations under the statute").

As noted by Judge Forrest in *Markett*, finding commercial websites to be a 'public accommodation' under the ADA also aligns with the position taken in various contexts by the Department of Justice, which is responsible for enforcing Title III. *See, Markett v. Five Guys*

*Enterprises LLC*, 2017 WL 5054568, fn3, <u>citing</u> *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). "The DOJ's position in this regard is entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)."  *Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568, footnote 3.

Finally, the third *Roberts* element is met here as well.  With respect to the third element, a website "is liable for 'discrimination' within the meaning of the ADA if, among other things, it fails to provide 'auxiliary aids and services' to ensure that the disabled are treated the same as other individuals." *Sullivan v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 WL 1299966, at *3 (S.D.N.Y. Mar. 21, 2019), <u>citing</u> 42 U.S.C. § 12182(b)(2)(A)(iii).  In *Thorne,* the plaintiff alleged that "Formula 1's website fails to provide alternative text for images, uses empty links containing no text, and uses redundant, adjacent links."  *See,* 2019 WL 6916098, at *3.  This court found that "these allegations, taken as true, plausibly show that Formula 1 discriminated against Thorne by denying him a full and equal opportunity to use its website."  *Id.*  Similar allegations were found sufficient to state a claim by Judge Ramos in *Wu v. Jensen-Lewis Co*., 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018).

In this case, the allegations in Amended Complaint are far more specific than those pled in *Thorne* and *Wu.*  The Amended Complaint alleges that, on July 27, 2020, August 2, 2020 and

December 30, 2020, the Plaintiff visited the Defendant's website with the intention of browsing and potentially making a purchase.  *See,* Docket 5, ¶22, 28, 29.  However, as alleged in the Amended Complaint, "many features on the Website fail to accurately describe the contents of graphical images, fail to properly label title, fails to distinguish one page from another, contain multiple broken links, contain headings that do not describe the topic or purpose, and the keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible."  *See,* Docket 5, ¶25.  If a Website does not accurately describe the content of a graphical image, for example, a visually impaired individual who is not fully blind may see a fuzzy image on the screen, but cannot select the image to hear his screen-reader software describe what the image depicts. *See e.g., Wu,* 345 F. Supp. 3d at 443 (explaining that "Alt-text enables screen-reading software to vocalize a description of an image to users" and finding that such allegations are sufficient to survive a motion to dismiss).

The Amended Complaint goes even further, and gives several even more specific examples of accessibility issues encountered on the Defendant's website.  For example,

- "the site does not provide to the screen-reader the color of the image, so the unsighted individual has no way of knowing the color of the product that they are evaluating for purchase."  *See,* Docket 5, ¶26(a).

- "When using the screen-reader software to try to add a product to the shopping cart to check out, the site results in an error and simply says 'unavailable', preventing the purchase from being completed." *See,* Docket 5, ¶26(b).

- "The site has an accessibility icon but the icon itself is not accessible.  The icon does not pop up when accessing the site, instead the user has to scroll through the whole page to locate the icon at the bottom."  *See,* Docket 5, ¶26(c).

These allegations are specific and more than sufficient to put the Defendant on notice as to the exact barriers that the Plaintiff encountered when he tried to navigate the Defendant's website. Defendant contends that "Dermpoint is still left with no way to determine what Plaintiff contends is the basis of the lawsuit" (Docket 14, at 6), but that argument ignores these plain and simple allegations. The basis of the lawsuit is the Website's failure to provide to the screen-reader the color of the product's image. Another basis of the lawsuit is the Website's failure to allow adding a product to the shopping cart using the screen-reader software. A third basis of the lawsuit is the Website's failure to make the accessible icon easily accessible to the people who actually need it. These grounds are plainly and expressly alleged in the Amended Complaint, in addition to the other accessibility barriers listed in paragraph 25 of the Amended Complaint.

The Defendant next attempts to factually dispute the allegations made in the Amended Complaint, which efforts are clearly improper at this stage of the litigation. For example, Defendant disputes the fact that Mr. Jaquez visited the Website on July 27, 2020 and August 2, 2020, as alleged in paragraphs 22 and 28 of the Amended Complaint. But such factual arguments cannot be considered at the pleading stage where "the Court must accept as true all well-pleaded factual allegations in the complaint" *Allaire Corp. v. Okumus*, 433 F.3d at 249–50.[1] Similarly,

---

[1] Prior to filing the instant Motion to Dismiss, Defendant's counsel repeatedly threatened the undersigned's law firm personally with sanctions for failure to conduct a pre-suit investigation, claiming that its Google Analytics did not show any visitors to its Website on the alleged dates. In response, on October 9, 2020, the undersigned provided the Defendant with a screenshot reflecting the Mr. Jaquez's browsing history for each of those dates, clearly reflecting visits to the Website on each of the dates alleged in the Amended Complaint. Defendant makes no mention of this proof already in its possession, which demonstrates that its claim about Plaintiff's visits to its site cannot be true. If Defendant's request to convert this Motion to a Motion for Summary Judgment is granted, Plaintiff can submit these documents to be considered.

Defendant's arguments regarding the very existence of the accessibility barriers raised in the
Amended Complaint is not something that can properly be considered at this stage of the litigation.

### C.  The ADA Applies To Websites, Even Without A Connection To A Brick-And-Mortar Location.

Throughout its Motion, Defendant urges this Court to take a narrow view of the ADA's
reach and scope.  For example, Defendant argues that "Clearly, the ADA was not drafted with the
Internet nor websites in mind. Websites did not exist until 1993, two years after the ADA was
adopted."  *See,* Docket 14, at 9.  But this is literally the exact opposite for how the ADA is to be
viewed and construed. "As a remedial statute, the ADA must be broadly construed to effectuate
its purpose of providing a clear and comprehensive national mandate for the elimination of
discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine
Comm'n,* 687 F.3d 63, 68 (2d Cir. 2012).  In the words of the venerable Judge Weinstein, "the
ADA is a broad mandate with the sweeping purpose of eliminating discrimination against disabled
individuals and integrating them into the economic and social mainstream of American life; one
of the Act's most impressive strengths is its comprehensive character." *Andrews v. Blick Art
Materials, LLC*, 268 F. Supp. 3d 381, 395–96 (E.D.N.Y. 2017), quoting *PGA Tour,* 532 U.S. at
675.  "The 'broad mandate' of the ADA and its 'comprehensive character' are resilient enough to
keep pace with the fact that the virtual reality of the Internet is almost as important now as physical
reality alone was when the statute was signed into law." *Id.*

Seemingly moving on from its argument that no commercial website is a 'public
accommodation', Defendant still continues to argue for a narrow application of the ADA's reach,
by arguing that the ADA *only* covers websites which have a nexus to a physical location.  But this
argument, too, has been repeatedly rejected within the Second Circuit.  For example, in *Sullivan
v. Study.com LLC*, No. 18-CV-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019), this

Court denied the Motion to Dismiss filed by a provider of online study classes, even though there was zero indication that Study.com had any actual brick-and-mortar location.  And in *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019), this court rejected the notion that the ADA solely is concerned with enabling access to physical locations, citing the Second Circuit's finding that the ADA "was meant to guarantee [disabled individuals] more than mere physical access"  *Id.,* at *2, citing *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28, 32 (2d Cir. 1999).

In *Andrews v. Blick Art Materials, LLC,* Judge Weinstein thoroughly analyzed this issue and rejected the notion that the ADA only reaches those commercial websites that are associated with a physical location.  After analyzing the Circuit split on this issue, Judge Weinstein found that the Second Circuit's holding in *Pallozzi* rejected the need to establish a nexus to a physical location: "The Second Circuit Court of Appeals emphasized that *it is the sale of goods and services to the public, rather than how and where that sale is executed*, that is crucial when determining if the protections of the ADA are applicable". *Andrews*, 268 F. Supp. 3d at 392 (italics in original). Adopting "the Second Circuit's sensible approach to the ADA", Judge Weinstein held that "it is unambiguous that under Title III of the ADA, dickblick.com is a place of public accommodation." *Id.,* at 393.  Holding otherwise would create an unworkable framework where some online stores can discriminate against disabled Americans and some cannot: "[Defendant's] suggested construction of Title III would contravene the ADA's broad remedial purpose. Its view would exempt a huge—and growing—swath of mainstream American life based on the Internet from the Act's requirements."  *Id.,* at 395.

In *Del-Orden v. Bonobos, Inc.*, No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017), Judge Engelmayer agreed with Judge Weinstein's analysis.  As phrased by Judge Engelmayer:

> whether ADA Title III applies to a commercial website presents two distinct questions of statutory construction, one broad, the other narrower. The broad question is whether such websites themselves qualify as electronic places of "public accommodation." If so, the ADA applies to them, and a denial to a blind person of equal access to such a website is actionable. Judge Weinstein and the First and Seventh Circuits, among others, have thus read the ADA. The narrower question is whether, even if commercial websites are not places of "public accommodation," the ADA is implicated when such a website operates in sufficiently close tandem with a conventional place of "public accommodation," like a merchant's brick-and-mortar store, that access barriers to the website serve as access barriers to that place of public accommodation. The Eleventh Circuit has held that the ADA may be violated in that fashion.

> For the following reasons, this Court holds that the ADA affords a right to relief in **either** circumstance. **A commercial website itself qualifies as a place of "public accommodation" to which Title III of the ADA affords a right of equal access.**

*Del-Orden v. Bonobos, Inc.*, 2017 WL 6547902, at *7 (emphasis added).  *See also, Dominguez v. Banana Republic, LLC*, No. 1:19-CV-10171-GHW, 2020 WL 1950496, at *9 (S.D.N.Y. Apr. 23, 2020)("As Judge Weinstein persuasively articulated in *Blick Art Materials*, a test that determined whether a website is subject to the ADA by analyzing whether and to what extent the website impedes a 'plaintiff's access to a specific, physical, concrete space, and establishes some nexus between the website and the physical place of public accommodation' is both unworkable and would produce absurd results").

In reaching this conclusion, Judge Engelmayer noted that the statute itself is ambiguous as to whether a website itself is a place of 'public accommodation'.  Given that ambiguity, Judge Englemayer relied on "the statute's purpose, legislative history, and context" which all "strongly support construing the term 'public accommodation' to apply to commercial marketplaces, including on the Internet, whether or not these marketplaces take a conventional physical form.'

11

*Id.*, at *8–9.  This logic is sound and has been joined by numerous courts within the Second Circuit. *See e.g., Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 572–73 (D. Vt. 2015)(applying the ADA to the website of an online-only digital library without a physical presence, and noting that "it would make little sense if a customer who bought insurance from someone selling policies door to door was not covered but someone buying the same policy in the parent company's office was covered. It is highly unlikely Congress intended such inconsistent results"); *Markett v. Five Guys Enterprises LLC*, No. 17-CV-788 (KBF), 2017 WL 5054568, at *2 (S.D.N.Y. July 21, 2017)("the text and purposes of the ADA, as well as the breadth of federal appellate decisions, suggest that defendant's website is covered under the ADA, *either* as its own place of public accommodation *or* as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodations under the statute").  *See also, Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F.Supp.2d 196, 200 (D. Mass. 2012)(holding that Title III covers entities providing exclusively web-based services to the public); *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994)("The plain meaning of the terms do not require 'public accommodations' to have physical structures for persons to enter. Even if the meaning of 'public accommodation' is not plain, it is, at worst, ambiguous. This ambiguity, considered together with agency regulations and public policy concerns, persuades us that the phrase is not limited to actual physical structures"); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999)(finding that the core meaning of Section 302, "plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (<u>whether in physical space or in electronic space</u>) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do").

**D.  Like The ADA, The NYCHRL Bars Discrimination On Websites.**

The New York City Human Rights Law ("NYCHRL") is embodied in section 8–107 of the New York City Administrative Code. The law makes it

> an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation [b]ecause of any person's actual or perceived ... disability ... directly or indirectly [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.

N.Y.C. Admin. Code § 8–107(4)(a).

The NYCHRL further requires that "any person prohibited by the [law] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to ... enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." *Id.* § 8–107(15)(a).  The Second Circuit has made clear that the NYCHRL covers *more* than the ADA and not *less.  See, Loeffler v. Staten Island University Hosp.,* 582 F.3d 268, 278 (2d Cir. 2009)("Interpretations of New York state or federal statutes with similar wording may be used to aid in interpretation of New York City Human Rights Law, viewing similarly worded provisions of federal and state civil rights laws as a *floor* below which the City's Human Rights law cannot fall") (emphasis in original).

In *Andrews v. Blick Art Materials, LLC*, Judge Weinstein noted that "unlike the ADA and NYSHRL, the NYCHRL covers discrimination that in the provision of 'accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.' N.Y.C. Admin. Code § 8–107(4)(a)".  *See, Andrews,* 268 F. Supp. 3d at 400.  "The use of the word 'provider' clearly covers Blick's website—even if one could quibble with whether the website is a 'place,' it undoubtedly 'provides' to the public 'accommodations, advantages, services, facilities

or privileges.'  Given the court's ruling that the plaintiff has stated a claim under the ADA and the

NYSHRL—the 'floor' of protection provided by the NYCHRL—he has also stated a claim under

the NYCHRL."  *Id.,* at 400-401.  The same logic applies here.  Given this Court's holding in

*Thorne* that the ADA does apply to websites, the NYCHRL plainly applies as well.

### E.  The Effect Of The WCAG Is Not A Reason To Dismiss This Case.

Defendant's final argument is that the Plaintiff's ADA claims should be dismissed

"because the WCAG are not legally binding on Defendant".  This argument makes no sense.

Defendant is being sued because its Website does not comply with the ADA's requirement to

provide "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation".  The issue in this case will be whether

the Website "fails to provide "auxiliary aids and services" to ensure that the disabled are treated

the same as other individuals.  *Sullivan v. Study.com LLC*, 2019 WL 1299966, at *3 (S.D.N.Y.

Mar. 21, 2019), underline citing 42 U.S.C. § 12182(b)(2)(A)(iii).  While the Web Content Accessibility

Guidelines may prove useful in demonstrating what a properly accessible website should look like,

ultimately it is the ADA which needs to be complied with, not the WCAG.  *See, e.g., Access Now,*

*Inc. v. Blue Apron, LLC,* 2017 WL 5186354, at *7 (D.N.H. Nov. 8, 2017)("the plaintiffs do not

allege that Blue Apron violates the ADA specifically by failing to comply with the WCAG 2.0 AA

standards. They rely on Title III of the ADA as governing the defendant's potential liability and

invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary

condition, for such compliance, and therefore as a potential remedy").

The question at issue on this Motion is whether the accessibility barriers alleged in the

Amended Complaint rise to the level of an ADA violation.  That presents a question of fact, which

is not appropriate for resolution at the pleading stage.  *See e.g., Diaz v. Lobel's of New York, LLC,*

No. 16CV6349NGGSMG, 2019 WL 3429774, at *9 (E.D.N.Y. July 30, 2019)(denying motion for summary judgment and holding that whether "a barrier impedes the full and equal enjoyment of the Website such that it rises to the level of an ADA violation is a disputed question of fact not appropriate for resolution by the court at this time").

Whether the WCAG should be considered in this case is similarly a premature question. The WCAG provides accessibility guidelines which "explain how to make web content more accessible to people with disabilities."[2]  The Court will only decide whether to require compliance with the WCAG if the Court first finds that the ADA has been violated. *See, Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).  In *Reed,* Judge Spatt rejected a similar challenge to the WCAG, noting that "the Defendant's concerns about the accessibility standard to-be applied are premature. The Court need only consider the appropriate remedy in the event that the Plaintiff establishes that a violation of Title III occurred. If the Plaintiff prevails, the Defendant will have ample opportunity to be heard about the appropriateness of any remedy." *Id.,* at 551.

This approach has similarly been adopted by courts throughout the country. *See e.g., Andrews*, 268 F.Supp.3d at 404 ("Defendant's concerns about potential modifications and remedies are not ripe for resolution at this stage of the litigation"); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, at *5 (C.D. Cal. Jan. 24, 2018) ("Whether Pizza Hut's digital offerings must comply with the WCAG or any other set of noncompulsory guidelines, is a question of remedy, not liability"); *Access Now, Inc.*, 2017 WL 5186354, at *7 ("As several other courts have observed, at this stage of the case it is premature to consider the remedies that may be imposed. If the plaintiffs prevail, the defendant will have ample opportunity to present evidence of an appropriate remedy"); *Reed v. CVS Pharmacy, Inc.*, 2017 WL 4457508, at *4 (C.D. Cal. Oct. 3, 2017) ("CVS'

---

[2] *See, https://www.w3.org/WAI/standards-guidelines/wcag/, last visited on February 9, 2021.*

argument puts the cart before the horse, and fundamentally misconstrues Plaintiff's Complaint….whether or not CVS's digital offerings must comply with the Web Content Accessibility Guidelines, or any other set of noncompulsory guidelines, is a question of remedy, not liability").

### IV.    CONCLUSION.

It is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.  The Amended Complaint plainly and clearly sets forth, with specificity, the accessibility issues that the Plaintiff encountered over three separate visits to the Defendant's website.  Plaintiff is permitted to seek redress for being denied the same access afforded to sighted users of the Defendant's website because the ADA and the NYCHRL both apply to websites.

Defendant's request to convert this Motion into a Motion for Summary Judgment should also be denied because Defendant raises so many factual disputes that plainly cannot be resolved on a Rule 56 Motion.  For example, the Defendant claims that (1) the Plaintiff did not visit the site on those dates, (2) that the Plaintiff did not encounter these accessibility barriers on those dates, and (3) that any (supposedly non-existent) accessibility issues were not caused by the Defendant's website and were instead caused by the Plaintiff's screen-reader software.  These are all plainly factual disputes, that cannot possibly be resolved on a Motion for Summary Judgment where the Plaintiff will have an opportunity to submit a competing affidavit disputing Defendant's claims.

For these reasons, it is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.

Dated: February 9, 2021

Respectfully submitted,

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.

16

Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:        (732) 695-3282
*Attorney for the Plaintiff*
*Ramon Jaquez*