```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| RAMON JAQUEZ, *on behalf of himself and all others similarly situated*,<br>                              Plaintiff,<br><br>                       -v-<br><br>DERMPOINT, INC.,<br>                              Defendant. | 20-CV-7589 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Ramon Jaquez brings suit against Dermpoint, Inc. ("Dermpoint"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq*. Dermpoint has moved to dismiss the complaint for failure to state a claim. For the reasons that follow, the motion is denied.

**I.    Background**

The following facts, drawn from the amended complaint, are presumed true for the purposes of this motion. (*See* Dkt. No. 12 ("AC").)

Plaintiff Ramon Jaquez, a resident of the Bronx, New York, is a legally blind, visually impaired person who requires screen-reading software to read online content. (AC ¶¶ 17, 18, 34.) Defendant Dermpoint is a California corporation that manufactures skincare products. (AC ¶¶ 19, 20.) It operates a website, www.dermpoint.com, through which consumers can browse and buy its products. (AC ¶ 20.)

On July 27, 2020, Jaquez visited Dermpoint's website, using screen-reading software, "with the intent of browsing and potentially making a purchase." (AC ¶ 22.) While navigating the website, however, Jaquez encountered "multiple barriers" that made it impossible for him to

1

"use and enjoy [Dermpoint's] website the same way sighted individuals do." (AC ¶¶ 24, 27.) Those barriers included (1) the fact that the website fails to provide the screen reader with information concerning image color, "so the unsighted individual has no way of knowing the color of the product that they are evaluating for purchase"; (2) the fact that the website returns an error page when a person using screen-reading software attempts to add a product to their online shopping cart; and (3) the fact that the website's accessibility icon does not pop up immediately, but is instead located at the bottom of the page. (AC ¶ 26.) Jaquez returned to the website on August 2, 2020, and December 30, 2020, but "these same access issues persisted." (AC ¶¶ 28-30.)

Jaquez has now brought suit against Dermpoint on behalf of himself and all others similarly situated, asserting claims under the ADA and the NYCHRL, and seeking declaratory relief. (AC ¶¶ 47-70.) Dermpoint has moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See* Dkt. No. 13.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

2

**III.     Discussion**

Dermpoint makes four arguments in favor of dismissing the complaint: (1) that Jaquez's "conclusory, unsupported allegations are insufficient to meet the pleading standard"; (2) that Jaquez fails to state a claim under the ADA; (3) that Jaquez fails to state a claim under the NYCHRL; and (4) that the Web Content Accessibility Guidelines ("WCAG"), a set of international guidelines for website accessibility, are not legally binding. (*See* Dkt. No. 14 at 10-19.) The Court addresses each in turn.

**A.     Factual Specificity**

First, Dermpoint argues that Jaquez's allegations lack the specificity required to meet the pleading standard. Dermpoint points out, for example, that Jaquez does not specify which images on the website fail to provide the screen reader with information about image color. (Dkt. No. 14 at 11.) Likewise, Dermpoint states that although Jaquez alleges that he "was unable to add a product to the shopping cart to check out," he did not "identify a single product for which he had this difficulty." (*Id.*) And with respect to Jaquez's allegations about the accessibility icon, Dermpoint argues that he "provides no details to support the allegation or how it [violates] any statute or guideline." (*Id.*)

These arguments are unpersuasive. A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, *Iqbal*, 556 U.S. at 678 (internal citation omitted), and the facts Jaquez does provide suffice to meet the pleading standard. Jaquez alleges, for example, that Dermpoint's website fails to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," and that it contains "multiple broken links" and inaccurate headings. (AC ¶ 25.) Jaquez also alleges that the website does not provide information about image color to the screen-reading software, that individuals using that software are unable to add items to their online shopping cart, and that the website's accessibility

icon is hard to find. (AC ¶ 26.) Taken as true, these allegations plausibly show that Dermpoint discriminated against Jaquez by denying him a full and equal opportunity to use its website. Indeed, courts in the Second Circuit have regularly found similar allegations enough to satisfy the pleading standard. *See, e.g.*, *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077, 2019 WL 6916098, at *3 (S.D.N.Y. Dec. 19, 2019) (holding that allegations that a website "fail[ed] to provide alternative text for images, use[d] empty links containing no text, and use[d] redundant, adjacent links" sufficed to state a plausible claim for relief); *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018) (same).

Dermpoint also disputes a number of factual allegations in the complaint. Citing Google Analytics data, Dermpoint claims that Jaquez could not have visited the website in July or August 2020, as the website had no visitors from New York during those months. (Dkt. No. 14 at 10.) In addition, Dermpoint claims that if Jaquez did visit the website on December 30, 2020, then Google Analytics data shows that he was, in fact, able to add items to his shopping cart. (*Id.*) But these arguments "turn[] on an issue of fact that is inappropriate for resolution on a motion to dismiss." *Fed. Hous. Fin. Agency v. Deutsche Bank AG*, 903 F. Supp. 2d 285, 291 (S.D.N.Y. 2012). At this stage, the Court accepts as true "all well-pled factual allegations in the complaint." *Indyke*, 457 F. Supp. 3d at 282 (citing *Steginsky*, 741 F.3d at 368). In addition, Dermpoint's data comes from a declaration from CEO Neil Butani and attached exhibits (Dkt. No. 15), which it would be inappropriate for the Court to consider on a Rule 12(b)(6) motion to dismiss. On such a motion, "our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents

4

incorporated in the complaint by reference."[1] *Horizon Comics Prods., Inc. v. Marvel Ent., LLC*, 246 F. Supp. 3d 937, 940 (S.D.N.Y. 2017) (internal citation omitted).

Accordingly, the Court concludes that Jaquez has pleaded sufficient factual content for the court "to draw the reasonable inference that [Dermpoint] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

B. **Americans with Disabilities Act**

Next, Dermpoint argues that Jaquez fails to state a claim under the ADA because a website does not qualify as a "public accommodation" under the statute. (*See* Dkt. No. 14 at 12-17.)

Section 302(a) of Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a). The Second Circuit has not directly "addressed whether the ADA's prohibition on discrimination in places of 'public accommodation' extends to 'places' on the Internet or to the online services of real-world public accommodations." *Del-Orden v. Bonobos, Inc.*, No. 17-CV-2744, 2017 WL 6547902, at *5 (S.D.N.Y. Dec. 20, 2017). But in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), the Second Circuit "rejected

---

[1] In the alternative, Dermpoint asks the Court to convert its motion to dismiss into a motion for summary judgment, which would allow the Court to consider matters outside the pleadings. (Dkt. No. 14 at 19.) The Court declines to do so at this juncture. *See Abbey v. 3F Therapeutics. Inc.*, 06 CV 409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) ("Federal courts have complete discretion … in determining whether to convert [a] motion [to dismiss] to one for summary judgment." (internal citation omitted)). The Court does, however, invite Dermpoint to file a targeted summary judgment motion on the question of whether Jaquez accessed the website as alleged.

5

the argument that 'Congress intended the statute to ensure [only] that the disabled have *physical* access to the facilities of insurance providers.'" *Thorne*, 2019 WL 6916098, at *2 (quoting *Pallozzi*, 198 F.3d at 32). In holding that Title III prohibited insurance companies from discriminating against disabled customers in the sale of insurance policies, the *Pallozzi* court reasoned that "Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods, [and] services … of any place of public accommodation' suggests … that the statute was meant to guarantee them more than mere physical access." *Pallozzi*, 198 F.3d at 32.

In *Pallozzi*'s wake, multiple district courts in this circuit — including this one — have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store. See *Thorne*, 2019 WL 6916098, at *2; see also *Del-Orden*, 2017 WL 6547902, at *5, 10 (holding that the term "public accommodation" in Title III extends to private commercial websites, and noting that "the four district courts in this Circuit to address the issue have each held … that Title III extends to online fora offering goods and services"). The Court sees no reason to depart from its holding in *Thorne*. The ADA, like other broadly worded statutes, ought to be read to "reflect[] an intentional effort to confer the flexibility necessary to forestall … obsolescence." *Id.* at *10 (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 532 (2007). Applying the ADA "to today's ubiquitous world of e-commerce … vindicates Congress's intent that the ADA remedy discrimination against the disabled in all aspects of society." *Id.* (internal quotation marks and citation omitted).

The Court thus concludes that the complaint states a violation of Title III of the ADA.

C. **New York City Human Rights Law**

Jaquez also brings city-law claims under the NYCHRL, which makes it unlawful for any "owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent[,] or employee of any place or provider of public accommodation" to deny a person the "full and

6

equal enjoyment … of the place or provider of public accommodation" on the basis of that person's "actual or perceived" disability. N.Y.C. Admin. Code § 8-107(4)(a). As with respect to the ADA, Dermpoint argues that a website does not qualify as a public accommodation under the law. But this argument is unavailing. The NYCHRL must be given "an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (N.Y. App. Div. 1st Dep't 2009). This means that the similarly worded "federal and state civil rights laws [provide] a *floor* below which the City's Human Rights Law cannot fall." *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 400 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)). Since the Court concludes that Jaquez has stated a claim under the ADA, it follows that he has likewise stated a claim under the NYCHRL. *See Thorne*, 2019 WL 6916098, at *3 ("Given the Court's conclusion that Thorne has stated a claim under the ADA and under state law, it follows perforce that he has also stated a claim under city law.").

        D.      **Web Content Accessibility Guidelines**

Finally, Dermpoint argues that Jaquez "erroneously casts the [w]ebsite's alleged failure to adhere to the best practices set forth in the WCAG" as a violation of the ADA. (Dkt. No. 14 at 17.) The WCAG are a set of international guidelines for web developers regarding how to "create a fully-accessible website." (Dkt. No. 14 at 18.) Given that the guidelines "have not been incorporated into law by Congress or DOJ regulations," Dermpoint argues that it cannot be legally bound by them. (*Id.*)

This argument misreads the complaint. Jaquez bases his claims not on any alleged noncompliance with the WCAG, but on the fact that he was denied the "full and equal enjoyment" of Dermpoint's website in violation of the ADA and the NYCHRL. (*See* AC ¶¶ 47-67.) In fact, Jaquez mentions the WCAG only twice, calling them "guidelines that should be

7

followed to ensure website accessibility" and alleging that compliance with the guidelines would allow Plaintiff to "independently navigate the [w]ebsite and complete a desired transaction as sighted individuals do." (AC ¶¶ 11, 36.) As presented, compliance with the WCAG is ultimately a question of remedy, not liability. *See, e.g., Robles v. Yum! Brands, Inc.*, No. 16-CV-8211, 2018 WL 566781, at *5 (C.D. Cal. Jan. 24, 2018) ("Whether [the defendant's] digital offerings must comply with the WCAG[,] or any other set of noncompulsory guidelines, is a question of remedy, not liability."); *Reed v. CVS Pharmacy, Inc.*, No. 17-CV-3877, 2017 WL 4457508, at *4 (C.D. Cal. Oct. 3, 2017) (same). At this juncture, however, a discussion of remedies is premature. *See Access Now, Inc. v. Blue Apron, LLC*, No. 17-CV-116, 2017 WL 5186354, at *7 (D.N.H. Nov. 8, 2017) (noting that, on a motion to dismiss, "it is premature to consider the remedies that may be imposed" (internal citation omitted)). The Court therefore declines to dismiss the complaint on the basis of this argument.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defendant is directed to answer the complaint by June 16, 2021.

The Clerk of Court is directed to close the motion at Docket Number 13.

SO ORDERED.

Dated: May 20, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge